[No. 21046.   Department One.   June 19, 1928.]

I. N. WOOD, *Appellant*, v. THOMAS W. WEBB, *Respondent*.[1]

[1] BOUNDARIES (13) — ESTABLISHMENT — EVIDENCE — SUFFICIENCY. The building by one owner of a fence near a boundary line, and allowing it to remain for seven years, does not constitute it an agreed location of the line, where the builder did not intend it as a line fence and the adjoining owner had nothing to do with it and did not have physical adverse possession of the excluded strip.

Appeal from a judgment of the superior court for Mason county, Wilson, J., entered October 5, 1927, dismissing an action to establish a boundary line, tried to the court.   Reversed.

*Frank C. Owings,* for appellant.

*Thomas M. Vance* and *Frank P. Christensen,* for respondent.

PARKER, J.—The plaintiff, Wood, commenced this action in the superior court for Mason county seeking a decree establishing the alleged uncertain boundary common to land belonging to him and land belonging to the defendant, Webb, under Rem. Comp. Stat., §§ 947-949 [P. C. §§ 7412, 7414], relating to the establishing of uncertain common boundaries, as to which the respective owners cannot agree.   The cause, being of

¹Reported in 268 Pac. 150.

equitable cognizance, proceeded to trial before the court sitting without a jury, which trial resulted in denial of the relief prayed for by Wood, and judgment of dismissal accordingly, upon the theory that the common boundary in question has been established and fixed upon the ground by agreement of the parties. From this disposition of the case in the superior court, Wood has appealed to this court.

The evidence, we think, clearly establishes the controlling facts of the case. Wood owns the west half of the northeast quarter of the northwest quarter of section 7, township 21, range 3, in Mason county. Webb owns lot 2, being the fractional east half of the northwest quarter of the northwest quarter of the section. This fractional lot is the result of the Skokomish river running northerly and southerly through the northwest quarter of the northwest quarter of the section; lot 2 being that part of that subdivision lying east of the river and west of Wood's land. Thus, the common boundary in question is the west line of Wood's land the east line of Webb's land. Webb claims that the agreed common boundary is along the line of a fence constructed by Wood about 1919; while Wood claims that the common boundary is approximately fifty-seven feet west of the line of the fence which he built in 1919, and that there has never been any agreement or acquiescence on his part recognizing the fence as being the common boundary line.

In 1918, Wood had Miller, a surveyor, measure the north line of the section, with a view of determining the northwest corner of his land. The location upon the ground of the northeast and northwest corners of the section were readily found, there being ample physical evidence remaining at those corners. Their location is not in dispute. The location of the north quarter corner of the section could not be found by

Miller.  It is entirely lost, all physical evidence of its location having disappeared.  Miller found the north line of the section to be sixty feet in excess of one mile in length.  He placed a stake in the line sixty chains west of the northeast corner of the section. That stake would be at the northwest corner of Wood's land, if the north section line were exactly one mile long; but, assuming Miller's measurements to be correct, that stake would not be at the northwest corner of Wood's land according to the proportionate subdivision rule applicable to deficiency and excess in the correct theoretical mile length of the north section line. Miller did not further attempt to locate the true theoretical northwest corner of Wood's land and advised Wood that his true northwest corner would be farther west by reason of the excessive length of the north section line.

In 1919, Ward, another surveyor, measured the north line of the section.  He found it to be some sixty-two feet in excess of one mile long.  He apparently found the stake which Miller had placed on the line sixty chains west of the northeast corner of the section. The only purpose of Ward's survey, so far as can be determined by this evidence, was to determine the length of the north section line.

Thereafter, in August, 1919, Ouelette, another surveyor, measured the north line of the section and found it to be fifty-three feet in excess of one mile long.  His work went no further than to determine the length of the north section line.  He seems to have noticed the stake placed on the line by Miller sixty chains west of the northeast corner of the section.  We think it plain that Webb had nothing whatever to do with the employment of Miller or with Miller's placing of the stake upon the line sixty chains west of the northeast corner of the section.

After Miller's survey, and seemingly after Ward's survey, Wood built a fence running south from the Miller stake placed sixty chains west of the northeast corner of the section. This fence was not built clear across Wood's land to the southerly line thereof. It had at least one gap in it of some considerable length. Wood testifies positively that he did not build this fence with the idea of making it a line fence. Webb had nothing whatever to do with the building of this fence, nor has he ever done anything towards its maintenance. There is no evidence in the record that Webb has been in possession, adverse to Wood, of any portion of the land within a distance of sixty feet or more west of the line upon which the fence was built.

.The trial court seems to have proceeded upon the theory that Wood having built this fence and it having remained there some seven years, it thereby became an agreed location upon the ground of their common boundary. We cannot so view the case. We think the evidence is all but conclusive in establishing the facts as we have above summarized them. We think it plain that Wood did not build the fence with any thought of agreeing upon that line as becoming the common boundary between his and Webb's land. Webb had nothing whatever to do with the building of the fence or with its maintenance. There is no evidence of Webb having physical possession, adverse to Wood, of the land west of the fence for a distance of at least sixty feet. We conclude that the location upon the ground of the common boundary in question is uncertain, that it has never been agreed upon by the parties, that there is a real controversy between them as to its correct location, and that therefore Wood is entitled to a determination of its location upon the ground and a final decree of the superior court accordingly.

The judgment of dismissal is reversed, and the cause

remanded to the superior court with directions·to proceed accordingly under Rem. Comp. Stat., §§ 947-949. Wood is awarded his ·costs incurred in prosecuting his appeal to this court.

FULLERTON, C. J., TOLMAN, MITCHELL, and ASKREN, JJ., concur.